IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL O'SULLIVAN, ) | |
| ) | |
| Petitioner, ) | No.   04 C 8092 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| U.S. CITIZENSHIP AND IMMIGRATION ) | |
| SERVICES, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION AND ORDER**

Petitioner Daniel O'Sullivan, a native of Jamaica and a legal permanent resident of the United States, seeks review pursuant to 8 U.S.C. § 1421(c) of the denial of his application for naturalization by respondent, the U.S. Citizenship and Immigration Services ("USCIS"). Petitioner argues that, notwithstanding a prior aggravated felony conviction, as a veteran of the Vietnam hostilities, he is entitled to naturalize under § 329 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1440, which lessens certain naturalization requirements for aliens who served in the U.S. military during a designated time of hostilities. See 8 U.S.C. § 1440; 8 C.F.R. § 329.2(a)(4).[1] Respondent argues that petitioner's application must be denied because § 1440 requires a showing of "good moral character," and that petitioner is statutorily barred from making such a showing because he has been convicted of an aggravated felony. For the reasons discussed below, the court denies the petition.

---

[1]For purposes of consistency, the court will hereafter refer to the statute by the sections of Title 8 of the United States Code rather than the sections of the INA.

## BACKGROUND

Petitioner was born in Jamaica in 1958 and entered the United States as a lawful permanent resident in 1970. He enlisted in the Marine Reserves after graduating from high school, entering active duty in September 1976. Petitioner served in the Marines and the Air Force during the Vietnam hostilities and was honorably discharged from the military in December 1981.

On August 16, 2000, petitioner was convicted in Wisconsin of being party to a crime of manufacture or delivery of less than five grams of cocaine. It was his first and only criminal arrest or conviction. After serving his Wisconsin sentence, petitioner was immediately transferred into the custody of the Department of Homeland Security ("DHS"), which had initiated removal proceedings against him. On August 5, 2003, petitioner was served with a Notice to Appear from respondent, then known as the Immigration and Naturalization Service ("INS"), stating that he was deportable based on his Wisconsin conviction.

On March 4, 2004, before petitioner's removal proceedings were completed and while he remained in DHS custody, petitioner filed a naturalization petition under § 1440. Respondent denied his naturalization petition on June 24, 2004, on the grounds that he was unable to establish the requisite good moral character because of his conviction. Petitioner filed a request for a hearing pursuant to 8 U.S.C. § 1447. On December 1, 2004, DHS affirmed the denial of petitioner's naturalization petition without conducting a hearing. Petitioner timely filed the instant petition for review with this court on December 15, 2004.

Subsequently, on April 25, 2005, the immigration judge in petitioner's removal proceedings, which had been pending since August 2003, ordered petitioner removed to Jamaica

based on his aggravated felony conviction. Petitioner timely appealed the removal order, and his appeal is pending.

## DISCUSSION

### I. Jurisdiction

Respondent challenges this court's jurisdiction for the first time in its reply brief, arguing that when the immigration judge found petitioner removable, this court was stripped of its jurisdiction over the pending naturalization petition. Respondent's argument is unpersuasive for two reasons. First, the procedural posture of petitioner's removal proceedings has not materially changed since he filed his petition with this court, at which point respondent concedes that removal proceedings were already pending against petitioner because he had been served with a Notice to Appear.[2] There is no final removal order against petitioner, as respondent conceded in open court on June 2, 2005, because petitioner's appeal of the immigration judge's removal order remains pending before the Board of Immigration Appeals ("BIA"). See 8 U.S.C. § 1101(a)(47)(B) (the order of deportation becomes final at the earlier of the BIA's determination affirming the order, or the expiration of the period in which the alien is permitted to seek review of the order).

Second, respondent's argument is premised on a mistaken reading of 8 U.S.C § 1429 and the cases it cites in support are inapposite to the relatively narrow category of wartime veterans applying for naturalization pursuant to § 1440. Respondent characterizes § 1429, referred to as the "priority provision" because it gives precedence to administrative removal proceedings over

---

[2] "For the purposes of [§ 1429], a notice to appear issued under 8 C.F.R. Sec. 239...shall be regarded as a warrant of arrest." 8 C.F.R. Sec 318.1.

3

judicial review of naturalization proceedings, as stripping district courts of jurisdiction in any case in which the petitioner is subject to removal proceedings. Respondent quotes selectively from § 1429, which in its entirety states:

> "Notwithstanding the provisions of section 405(b) of this Act, *and except as provided in sections 1439 and 1440 of this title* no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act...." 8 U.S.C § 1429 (emphasis added).

Respondent's quotation omits the first two clauses, which contain the most pertinent language for the purposes of the instant case and directly contradict respondent's argument that this court lacks jurisdiction here. By its clear language, the "priority provision" of § 1429 simply does not apply to applications under 8 U.S.C. § 1440.

Federal regulations and case law support this reading. Federal regulations state that applicants under § 1440 who are concurrently in removal proceedings due to the issuance of a Notice to Appear, such as petitioner here, may be naturalized. "The [§ 1440] applicant may be naturalized even if an outstanding notice to appear pursuant to 8 C.F.R. part 239 (including a charging document issued to commence proceedings under section 236 or 242 of the [INA] prior to April 1, 1997) exists." 8 C.F.R § 329.2(e)(3). A court in the Eastern District of New York recently characterized this section of the regulations to "permit veterans to apply for naturalization during removal proceedings." Boatswain v. Ashcroft, 267 F. Supp. 2d 377, 378 (E.D.N.Y. 2003).

Respondent relies on three cases to support its argument that this court lacks jurisdiction, but none of these involve § 1440 petitioners, and are thus inapposite. See Perdomo-Padilla v. Ashcroft, 333 F.3d 964 (9th Cir. 2003); Tellez v. U.S. I.N.S., 91 F. Supp. 2d 1356 (C.D.Cal. 2000); Apokarina v. Ashcroft, 232 F. Supp. 2d 414 (E.D.Pa. 2002). Even if these cases were applicable, they have been abrogated or called into question. The Third Circuit questioned the holding in Apokarina in an unpublished opinion remanding the case to the district court. Apokarina v. Ashcroft, 93 Fed. Appx. 469, 2004 WL 742286, unpub. op. (3rd Cir. 2004). Since deciding Perdomo-Padilla and Tellez, the Ninth Circuit has explicitly held that a district court has jurisdiction to review the denial of a § 1440 naturalization petition while removal proceedings are pending, and abrogated its holding in Tellez. "As we see it, § 1421(c) plainly confers jurisdiction on district courts to review any denial of an application for naturalization." De Lara Bellajaro v. Schiltgen, 378 F. 3d 1042, 1043 (9th Cir. 2004). The petitioner in De Lara Bellajaro petitioned the district court for review of the BIA decision denying his application based on pending removal proceedings. The Ninth Circuit noted that "the scope of review extends only to the determination that was actually made by the agency." Id.

In the instant case, respondent denied petitioner's application on the basis of its finding that he was statutorily barred by his aggravated felony conviction from fulfilling the good moral character requirement it found to be applicable to § 1440 applicants. A final order of removal has not been entered against petitioner. Accordingly, the court has jurisdiction to review the denial of petitioner's application for naturalization de novo. The question, then, is whether respondent properly found that petitioner was barred from demonstrating good moral character based on his aggravated felony conviction.

## II. Moral character requirement

Naturalization of non-citizens is governed by Title 8 U.S.C. §§ 1421-1504. Section 1427(a) sets forth the general requirements for naturalization, including that "[n]o person shall be naturalized unless [the] petitioner, (1) immediately preceding the date of filing his petition for naturalization had resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years * * *, and (3) during all the period referred to in this subsection has been and still is a person of good moral character... ." The "period referred to" in § 1427(a)(3) is the five-year residency period set forth in § 1427(a)(1), and thus § 1427(a) creates a five-year good moral character requirement for petitioners for naturalization. See Boatswain v. Ashcroft, 267 F. Supp. 2d 377, 383 (E.D.N.Y. 2003). Section 1439 governs naturalization for peacetime veterans, and lessens, inter alia, the residency and physical presence requirements of § 1427. Peacetime veterans are required to establish three years of honorable service and good moral character in order to be eligible for naturalization.

Section 1440 provides further relaxed naturalization requirements for wartime veterans. Section 1440(a) requires that such aliens: (1) served honorably during a time of military conflict; and (2) were in the United States, or certain designated territories, at the time of their "enlistement, reenlistment, extension of enlistment, or induction" into the military, or "at any such time subsequent to enlistment or induction such person shall have been lawfully admitted to the United States for permanent residence." Section 1440(b) states, in pertinent part, "A person filing an application under subsection (a) of this section shall comply in all other respects with the requirements of this subchapter... ."

Section 1440 thus incorporates the requirements of § 1427, including the five-year period of residence during which good moral character must be established, as well as other prerequisites such as knowledge of English and United States history. See 8 U.S.C. §§ 1423 and 1429; see also Boatswain, 267 F. Supp. 2d at 380. Subdivisions (b)(1)-(3) of § 1440, however, create certain exceptions to the requirement that applicants comply with all the requirements of the naturalization subchapter. Relevant to the instant case, § 1440(b)(2) provides that "no period of residence or specified period of physical presence within the United States or any State or district of the United States shall be required."

In contrast to § 1427 and § 1439, § 1440 contains no reference to good moral character. In an apparent attempt to fill the gap in the statutory language, the INS promulgated a regulation in 1996 that requires a wartime veteran to establish that he or she "[h]as been, for at least one year prior to filing the application for naturalization, and continues to be, of good moral character, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States." 8 C.F.R. § 329(d). Respondent thus takes the position that wartime veterans are subject to a one-year good moral character requirement. As discussed below, petitioner challenges the regulation on several grounds.

There is sparse judicial precedent addressing the issue of good moral character for wartime veterans subsequent to the enactment of § 1440, as Judge Block of the Eastern District of New York noted in Boatswain, 267 F. Supp. 2d at 383. Like petitioner in the instant case, the petitioner in Boatswain was a lawful permanent resident found removable based on an aggravated felony conviction, who subsequently brought an action in district court pursuant to 8

U.S.C. § 1421(c) to review the INS's denial of his naturalization application. After conducting a searching analysis of the relevant statutory language, legislative history, and case law, Judge Block concluded that § 1440 requires a showing of good moral character. Petitioner in the instant case does not cite any case in which the INA has been interpreted to wholly exempt veterans from good moral character, and the court's research has failed to reveal any such authority. The court agrees with Judge Block, for the reasons discussed below, that wartime veterans applying for naturalization under § 1440 are subject to a good moral character requirement.

In support of his argument that the moral character requirement does not apply to wartime veterans, petitioner points to: (1) § 1440's waiver of § 1427(a)'s residency requirements; and (2) the absence of any language in § 1440 addressing good moral character. Petitioner asserts that, "because the good moral character requirement only applies to specific periods of residency and under [§ 1440] all periods of residency are waived, the good moral character requirement is also waived." This leap of logic, however, is not supported by the statutory language or the legislative history.[3]

Petitioner is correct that Congress has demonstrated a general intent to lessen the naturalization requirements for wartime veteran applicants in recognition of the sacrifices of non-citizens who serve in a time of military hostilities and to provide incentives for military service in times of war. The legislative history, however, supports the argument that § 1440 was enacted to

---

[3]Reference to legislative history is justified because, as Judge Block stated in Boatswain, 267 F. Supp. 2d at 379, "the immigration laws are a 'patchwork,' containing 'numerous inconsistencies and vagaries.'" (citing David Jones, U.S. Immigration - A Legacy of Reform and Reorganization and Possible Solutions, 11 Fla. J. Int'l L. 409, 427 (1997)).

reward aliens who had defended this country by relieving them of "some of the burdensome requirements of the general naturalization laws," but not to eliminate all requirements. H.R. Rep. No. 1710, 77th Cong., 2d Sess. 2 (1942). In addition, the statute expressly requires that an applicant "shall comply in all other respects" with the naturalization requirements of the INA, and good moral character is not specifically exempted. 8 U.S.C. § 1440(b).

Case law supports this reading of § 1440. See In re Petition for Naturalization of Brodie, 394 F. Supp. 1208, 1209 (D. Ore. 1975)("Lawful admission to this country, periods of residency and physical presence, and non-deportability are waived. Not waived, however, is the burden of establishing 'good moral character.'"). Other courts have also recognized that § 1440 veterans are not exempt from the good moral character requirement. See Nolan v. Holmes, 334 F.3d 189, 193 (2nd Cir. 2003); Castiglia v. I.N.S, 108 F. 3d 1101, 1102 (9th Cir. 1997); Tan v. I.N.S., 931 F. Supp. 725, 729 (D. Haw. 1996).

In Nolan, after cross-referencing the general naturalization requirements of § 1427 with those for wartime veterans § 1440, the Second Circuit noted that § 1440 does not contain a specific moral character exemption and that § 1427 requires a showing "not just that the applicant was of good moral character with respect to the specified periods of residence and physical presences, but also a showing that the applicant 'is' of good moral character." Nolan, 334 F.3d at 196 (citing 8 U.S.C. § 1427(a) (applicant must establish that "during all the periods referred to in this subsection [applicant] has been *and still is* a person of good moral character.") (emphasis added)). As the Nolan court explained, "Use of the conjunctive and the present tense suggests that Congress intended that section to be broader than requiring good moral character

merely during past periods of residence and physical presence, and intended that an applicant must also show good moral character at the time of his naturalization application. Id.

Similarly, the Boatswain court found that § 1440(b)(2), while eliminating the residency requirement, does not eliminate the residual requirement of § 1427(a)(3) that the applicant "still is a person of good moral character[.]". 267 F. Supp. 2d at 386. Like Nolan, Boatswain rejected the petitioner's argument that he was not required to show good moral character, noting that "[t]o hold otherwise would allow those who have committed serious crimes subsequent to their discharge from service to naturalize...The Court does not believe Congress would have intended such a result." 267 F. Supp. 2d at 387. In the instant case, the court agrees that the statutory language and the legislative history do not support petitioner's argument that § 1440 eliminates the moral character requirement.

Petitioner also argues that 8 C.F.R. § 329.2(d), applying the good character requirement to wartime veterans, is not entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (holding that if a court, employing traditional tools of statutory construction, cannot ascertain Congress's intention on the precise question at issue, deference must be given to the reasonable interpretations of the agency "entrusted to administer the statute."). Petitioner contends that the regulation is not entitled to deference because there is no statutory ambiguity to trigger the Chevron analysis, respondent is without authority to "read[] a good moral character requirement" into § 1440, and "the interpretation is not one that Congress would have sanctioned." The court, however, need not decide whether Chevron applies to the federal regulations cited by respondent because they

merely support the court's independent conclusion, discussed above, that Congress intended that the good moral character requirement applies to wartime veterans.

## III. 8 U.S.C. § 1101(f)(8)

Petitioner argues that even if the good moral character requirement applies to § 1440 applicants, he should be given the opportunity to establish that he satisfied the requirement despite his aggravated felony conviction. Petitioner does not contest that his conviction constitutes an aggravated felony for the purposes of the INA, and falls within the meaning of 8 U.S.C. § 1101(a)(43)(B). Respondent argues that petitioner is statutorily barred from establishing good moral character because 8 U.S.C. § 1101(f)(8) precludes a finding of good moral character for an applicant "who at any time has been convicted of an aggravated felony." Section 1101(f), as amended in 1994, provides, "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is or was...," and lists seven statutory bars. 8 U.S.C. § 1101(f).[4] Six of the bars pertain to particular conduct occurring "within" or "during" the "period for which good moral character is required to be established," such as the residency periods prescribed in 8 U.S.C. §§ 1427(a) and 1439(a), or to the present state of an applicant. See 8 U.S.C. § 1101(f)(1), (3)-(7). In contrast, as the Boatswain court notes, the final statutory bar applies to "one who *at any time* has been convicted of an aggravated felony." Id. (citing 8 U.S.C. § 1101(f)(8) (emphasis added)). Section 1101(f)(8) is the only subdivision that uses the phrase "at any time."

---

[4] 8 U.S.C. § 1101(f)(2) was repealed pursuant to Pub. L. 97-116, § 2(c)(1), Dec. 29, 1981, 95 Stat. 1611.

11

In the instant case, petitioner concedes that he must show present good moral character but contends that § 1101(f) does not preclude him from doing so, arguing that the phrase "at any time" in § 1101(f) is modified by the section's preceding portion regarding periods of residency. Petitioner asserts the because § 1440 applicants are not subject to any residency requirement, there is "simply no 'period' to trigger the [§ 1101(f)] bar and [petitioner] should not be *per se* barred from demonstrating his present good moral character due to his single past conviction." The court disagrees that a residency requirement is needed to trigger § 1101(f)(8). That section unambiguously precludes an alien convicted of an aggravated felony "at any time" from proving good moral character, and even if the court were to accept petitioner's argument that he must only show present good moral character, as opposed to the one-year period prescribed in 8 C.F.R. 392(d), he remains barred by his prior conviction.

In Castiglia, the Ninth Circuit termed it "nonsense" to argue that the lack of a residency period in § 1440 precludes application of § 1101 because the statute does not amend the "usual meaning of the phrase 'at any time" which is "'at any time at all.'" Castiglia, 108 F.3d 1101, 1103 (9th Cir. 1997).[5] Castiglia held that because 8 U.S.C. § 1101(f)(8) provides that an aggravated felony precludes a finding of good moral character at "any time," an aggravated felony conviction would be "an absolute bar to a finding of good moral character." See also Boatswain, 267 F. Supp. 2d at 386 ("the Court fully agrees with the Ninth Circuit's reasoning that § 1101(f)(8) constitutes a total bar to naturalization for a person who has at any time has

---

[5]8 U.S.C. § 1101(f)(8) previously barred non-citizens "convicted of the crime of murder." This phrase was struck and "convicted of an aggravated felony" was added. H.R. No. 383, 102d Cong., 1st Sess. 3 (1991). Castiglia therefore examines a different legislative history than is relevant here. The Ninth Circuit's reading of the current language of § 1101(f)(8), which is independent of its analysis of the legislative history, remains applicable here.

12

been convicted of an aggravated felony."). As the Ninth Circuit noted in Castiglia, "When Congress wanted to refer to specified periods of the code, Congress did not use 'at any time,' but instead wrote 'during such period....' In contrast, § 1101(f)(8) does not limit the preclusive effect of having been convicted of an aggravated felony to 'such period,' but rather bars from proving good moral character an applicant who at *any time* has been convicted of an aggravated felony." 108 F.3d at 1103 (emphasis in original).

Petitioner argues that because he is not per se barred by § 1101(f)(8), the court should consider his conviction as only one aspect of his conduct in society and find that he is of good moral character. The court agrees that petitioner stands in stark contrast to many of the other petitioners denied naturalization who had lengthy and serious criminal histories. See e.g., Castiglia, 108 F.3d at 1102 (petitioner was convicted of armed robbery, sale of heroin, and second degree murder). Respondent does not challenge that in his thirty years in the United States, petitioner voluntarily enlisted and provided honorable military service, was arrested and convicted only once, and has extensive family ties in this country. Unfortunately, § 1101(f)(8) renders these factors moot. As the Supreme Court has noted, it is a well-established rule that Congress's "power over aliens is of a political character and therefore subject only to narrow judicial review," and that "Congress regularly makes rules that would be unacceptable if applied to citizens." Fiallo v. Bell, 430 U.S. 787, 792 (1977) (citations omitted); see also Groza v. I.N.S., 30 F.3d 814, 823 (7th Cir. 1994) (Congress may choose a harsh penalty for a broad class of offenders under the INA.). Although the result may appear harsh, as here, it is not for this court to undermine Congress's decision that an alien convicted of aggravated felony be forever barred from demonstrating good moral character as required to become a naturalized citizen.

Petitioner also argues that respondent lacks the authority to prescribe a one-year period of good moral character in 8 C.F.R. § 329(d), and thus that portion of the regulation is not entitled to Chevron deference. The court need not decide whether the one-year period is proper, however, because it finds, as discussed above, that Congress requires that petitioner must, but cannot, establish good moral character. Accordingly, petitioner is barred under § 1101(f)(8) from naturalizing.

## CONCLUSION

For the reasons discussed above, the court denies respondent's motion to dismiss and grants the petition to review petitioner's application for naturalization. The court, however, affirms the DHS order of December 1, 2004, denying petitioner's application for naturalization.[6]

**ENTER:** **June 9, 2005**

**Robert W. Gettleman**
**United States District Judge**

---

[6]As respondent suggested in its reply brief, this order does not preclude petitioner from pursuing "his administrative and judicial remedies with respect to his removal order entered by the immigration judge on April 25, 2005."